***********
Upon review of the competent evidence of record with reference to the errors assigned, and considering the briefs and oral arguments of the parties, the Full Commission finds no good grounds to receive further evidence, or to rehear the parties or their representatives. Upon reconsideration of the evidence, the Full Commission affirms, with modifications, the Opinion and Award of the Deputy Commissioner, and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which the parties entered into at the hearing as:
 STIPULATIONS *Page 2 
1. The parties are properly designated, and there is no question as to the mis-joinder or the non-joinder of any party.
2. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
3. The parties are properly before the North Carolina Industrial Commission, and the North Carolina Industrial Commission has jurisdiction of the parties and of the subject matter of these proceedings.
4. An employment relationship existed between the parties on or about September 26, 2003, the date of Plaintiff's work injury to his right hand.
5. Defendant is self-insured, and Risk Management Services, Inc. is the servicing agent.
6. The parties contend that Plaintiff's average weekly wage is $658.72, yielding a compensation rate of $439.17.
7. On February 16, 2010, the parties attended a mediated settlement conference, but were unable to resolve this matter.
8. This matter was the subject of a previous Full Commission Opinion and Award and a North Carolina Court of Appeals opinion.
9. The parties stipulated to the following documents being admitted into evidence as stipulated exhibits:
 a. Stipulated Exhibit One: Pre-Trial Agreement;
 b. Stipulated Exhibit Two: Various documents, including:
 1. North Carolina Industrial Commission forms and filings;
 2. Plaintiff's medical records; *Page 3 
 3. September 12, 2006 Transcript of the evidence;
 4. January 22, 2007 Opinion and Award of former Deputy Commissioner Morgan S. Chapman;
 5. December 12, 2007 Full Commission Opinion and Award;
 6. December 16, 2008 North Carolina Court of Appeals Opinion;
 7. Discovery responses;
 8. Plaintiff's Social Security Disability Notice of Award;
 9. Two photographs of Plaintiff cutting meat;
 10. "Employability Assessment" dated January 15, 2010;
 11. October 2, 2006 deposition of Dr. William De Araujo;
 c. Defendant's Exhibit One: "Labor Market Survey Report" dated May 5, 2010.
 *********** ISSUES
The issues to be determined are:
1. Whether Plaintiff is entitled to any further workers' compensation benefits?
2. Whether Plaintiff is entitled to attorney's fees under N.C. Gen. Stat. § 97-88.1?
 ***********
Based upon the competent and credible evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT *Page 4 
1. Plaintiff is 63 years old, with a date of birth of October 29, 1947. Plaintiff completed the 10th
grade and has a general equivalency diploma (GED). For approximately 33 years, Plaintiff worked as a butcher/meat cutter with Defendant and other employers.
2. This matter was the subject of a previous Full Commission Opinion and Award determining that Plaintiff sustained a compensable occupational disease as a result of his job duties with Defendant.
3. On December 16, 2008, the North Carolina Court of Appeals affirmed the December 12, 2007 Full Commission Opinion and Award on the issues of causation and disability. With respect to disability, the Court of Appeals held:
 In the instant case, Plaintiff produced competent evidence `that he is capable of some work but that it would be futile because of preexisting conditions, i.e., age, inexperience, lack of education, to seek other employment [.]' Russell, 108 N.C. App. at 765, 425 S.E.2d at 457. Plaintiff is fifty-eight years old and has a tenth grade education and a GED. Plaintiff has worked as a meat cutter for thirty-three years-more than half the span of his life. Plaintiff has no other skills or licenses, and his work experience is related only to meat cutting. Dr. de Araujo testified that Plaintiff could not do work which would require three point pinching or grasping with his hand, or which would expose Plaintiff to cold temperatures or require Plaintiff to lift more than five pounds. Further, Plaintiff must wear a brace when doing any lifting. Dr. de Araujo considered Plaintiff permanently unable to perform the work of a butcher or meat cutter. Plaintiff testified that he attempted to take keyboard classes but experienced significant difficulty and pain. Defendants had no positions available within the ambit of Plaintiff's restrictions.
 `[O]nce the claimant meets this initial burden, the defendant who claims that the plaintiff is capable of earning wages must come forward with evidence to show not only that suitable jobs are available, but also that the plaintiff is capable of getting one, taking into account both physical and vocational limitations.' Kennedy v. Duke University Medical Center, 101 N.C. App. 24, 33, 398 S.E.2d 677, 681 (1990). Despite arguing on appeal that Plaintiff is not disabled, Defendants failed to present any evidence of *Page 5 
Plaintiff's capability to earn wages, given Plaintiff's limitations, in any employment.
 We conclude that the evidence in this case is sufficient to establish Plaintiff's disability pursuant to N.C. Gen. Stat. § 97-2(9).
4. Plaintiff has continued to seek treatment from Dr. De Araujo for his right hand complaints after the record closed in the prior proceeding and after the filing of the prior Full Commission and Court of Appeals decisions. The last note from Dr. Araujo in this record is dated February 24, 2010. On July 19, 2007, Dr. Araujo noted that Plaintiff was still not capable of light duty work secondary to his motion disorder and that he still wanted Plaintiff to see a dystonia specialist. On November 29, 2007, Dr. Araujo noted in a "To Whom It May Concern" letter that Plaintiff was unemployable at the time. His opinion on Plaintiff's disability has remained substantially the same as what he expressed in his 2006 deposition.
5. In an effort to meet their burden to show that suitable jobs were available and that Plaintiff was capable of getting one, taking into account both physical and vocational limitations, Defendant sent Plaintiff to Dr. David Arthur Dalsimer, an orthopaedist, for an independent medical examination. Dr. Dalsimer noted that Plaintiff complained of severe pain with use of his right thumb, pain with "pinch and grip and work activities," an inability to flatten his hand, and a right hand tremor. A physical examination revealed severe pain over the right first carpometacarpal joint with crepitus upon palpation, limitations in range of motion, numbness in the forearm and at the incision site, but no numbness in the digits or radial, median, or ulnar nerves, decreased pinch grip, and a resting tremor that worsened when concentrating. Dr. Dalsimer was of the opinion that Plaintiff's tremor was most likely neurological in origin, unrelated to his right hand complaints, and recommended a neurology consultation for it. With respect to Plaintiff's continued complaints of pain, loss of strength, and loss of function of his *Page 6 
right hand, Dr. Dalsimer was of the opinion that this was most likely due to impingement of the metacarpal base and osteophytes, and recommended that Plaintiff continue wearing his brace for daily activities, and using his right hand as much as possible. Dr. Dalsimer opined that Plaintiff could return to work as a butcher/meat cutter without any restrictions other than the use of his brace for comfort.
6. On August 17, 2009, Defendant filed a Form 33 request for hearing stating, "Defendants contend that Employee-Plaintiff has not established ongoing disability as the result of his original compensable injury. Plaintiff has been released by his authorized treating physicians and assigned restrictions." The Full Commission finds that the restrictions given to Plaintiff from his treating physicians were substantially the same as they were in the proceedings prior to the December 16, 2008 North Carolina Court of Appeals Opinion.
7. On October 20, 2009, Dr. De Araujo noted, and the Full Commission finds as fact, that Plaintiff still had a resting tremor and could not perform "any heavy work that involves three-point pinch." On February 24, 2010, Dr. De Araujo noted, and the Full Commission finds as fact, that Plaintiff had persistent crepitus with range of motion of his right dorsal thumb, restricted abduction of the thumb, and was only capable of work that would not involve forceful gripping or fine movements of his right hand. Dr. De Araujo encouraged Plaintiff to contact him "urgently if he loses the ability to extend the IP joint."
8. At Dr. De Araujo's most recent deposition on August 3, 2010, he indicated that it was still his opinion that Plaintiff's tremor is related to his second surgery for his compensable occupational disease of right thumb carpometacarpal joint arthritis, and that it is unsafe for him to perform any type of work that involves use of his right hand or any fine dexterity of the right upper extremity. In addition, it remained Dr. De Araujo's opinion, and the Full Commission *Page 7 
finds as fact, that Plaintiff is unemployable due to the dysfunction of his right upper extremity. Dr. De Araujo further opined, based upon his treatment of Plaintiff for over five years, that he had no secondary gain issues, that he has legitimate complaints and that he truly wanted to return to work. The Full Commission gives greater weight to the opinion testimony of Dr. De Araujo over any contrary opinions of Dr. Dalsimer.
9. On January 15, 2010, Ms. Kimberly F. Deal, a vocational rehabilitation counselor employed by Defendant, performed an employability assessment. On May 5, 2010, Ms. Deal also performed a labor market survey to locate suitable employment within Plaintiff's work restrictions. Defendant contends that the employability assessment and labor market survey, along with the opinions of Dr. Dalsimer, show that suitable jobs are available and that Plaintiff is capable of getting one, taking into account both his physical and vocational limitations.
10. In completing the January 15, 2010 employability assessment and the May 5, 2010 labor market survey, Ms. Deal reviewed Plaintiff's medical records, including the November 29, 2007 note of Dr. De Araujo stating that Plaintiff was unemployable at the time. Ms. Deal listed as Plaintiff's work restrictions an inability to utilize his right extremity, and she further noted that Plaintiff would require employment that could be modified for work with only one arm. Based upon Plaintiff's work restrictions, transferrable skills, education, age, and physical limitations, Ms. Deal was of the opinion that he was employable, and that there were several positions available within his geographical area and transferrable skill set. Ms. Deal specifically located 10 positions which she felt were suitable employment for Plaintiff in his geographic area in an employment search that she performed from November 23, 2009 through December 21, 2009, including several sales and other retail/customer service positions and *Page 8 
management positions in retail stores such as K-Mart and a grocery store. These positions would require some level of retraining for Plaintiff.
11. Although Ms. Deal acknowledged that Plaintiff's age can be a "stigma" with particular employers, she did not think that this would limit his employment search efforts. With regard to Plaintiff's physical limitations, Ms. Deal testified that she spoke with several potential employers with positions available within Plaintiff's work restrictions that indicated their willingness to hire candidates with hand or arm limitations.
12. Ms. Lisa S. Parker, a vocational rehabilitation counselor employed by Defendant, assisted Ms. Deal in performing portions of the May 5, 2010 labor market survey with respect to Plaintiff's ability to locate suitable employment within his work restrictions. Ms. Parker was familiar with Plaintiff through her previous efforts in 2006 in providing employment search/placement services to him, including an administrative assistant certification class. According to Ms. Parker, she was able to locate suitable employment within Plaintiff's restrictions through internet searches and various other postings for inclusion in the May 5, 2010 labor market survey.
13. Although Defendant came forward with evidence that with retraining, there might be some positions Plaintiff may be able to perform, Dr. De Araujo has not approved any of the prospective positions identified and remains of the opinion that Plaintiff is not employable. The Full Commission gives little weight to the opinion testimony of Ms. Deal and Ms. Parker.
14. The Full Commission finds, based upon the greater weight of the evidence, Defendant failed to meet its burden of proving that Plaintiff is capable of earning wages, given his limitations. *Page 9 
15. Defendant had reasonable grounds to defend this claim, as some of the medical and other evidence was in dispute.
16. In the discretion of the Full Commission, Plaintiff should be awarded attorney's fees as a part of the costs of Defendant's appeal to the Full Commission, upon a proper showing of the time expended defending this appeal pursuant to N.C. Gen. Stat. § 97-88, since Defendant brought the appeal and the Full Commission by its decision is ordering Defendant to make continuing payments to Plaintiff.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. As previously found by the Full Commission and affirmed by the North Carolina Court of Appeals, as a result of Plaintiff's employment duties with Defendant, he contracted a compensable occupational disease involving his right hand resulting in disability on May 31, 2005. Plaintiff met his initial burden of proving disability, thereby causing the burden to shift to Defendant. N.C. Gen. Stat. § 97-53(13) (2010).
2. Defendant failed to meet its burden of proving that Plaintiff is capable of earning wages, given Plaintiff's limitations, in any employment. Kennedy v. Duke Univ. Medical Ctr.,101 N.C. App. 24, 398 S.E.2d 677 (1990). Following the December 16, 2008 North Carolina Court of Appeals decision, Plaintiff continued to treat with Dr. Araujo and when re-deposed on August 3, 2010, he was still of the opinion that Plaintiff is unemployable due to the dysfunction of his right upper extremity. The Full Commission has accorded greater weight to the opinion testimony of Dr. Araujo over the opinions of Dr. Dalsimer, Ms Deal and Ms. Parker. Thus, the *Page 10 
evidence establishes that Plaintiff continues to be temporarily and totally disabled from employment and is entitled to continuing temporary total disability compensation through the present and ongoing until further order of the North Carolina Industrial Commission. N.C. Gen. Stat. § 97-29 (2010); Kennedy v. Duke Univ.Medical Ctr., 101 N.C. App. 24, 398 S.E.2d 677 (1990).
3. The medical treatment Plaintiff received and continues to need with respect to his compensable occupational disease of right thumb carpometacarpal joint arthritis was reasonably necessary in order to effect a cure, to give relief, and/or to lessen his period of disability, and Defendant is obligated to pay for such treatment. Dr. De Araujo shall remain Plaintiff's authorized treating physician. N.C. Gen. Stat. §§ 97-2(19),97-25, 97-25.1 (2010).
4. Defendant had reasonable grounds to defend this claim, as some of the medical and other evidence was in dispute. N.C. Gen. Stat. § 97-88.1 (2010).
5. In the discretion of the Full Commission, Plaintiff is entitled to attorney's fees associated with this appeal to the Full Commission, pursuant to N.C. Gen. Stat. § 97-88. Plaintiff's counsel shall submit an Affidavit setting forth the time spent defending this matter since Defendant's Notice of Appeal to the Full Commission. N.C. Gen. Stat. § 97-88 (2010).
 ***********
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission makes the following:
 AWARD
1. Defendant shall continue to pay temporary total disability compensation to Plaintiff at the rate of $439.17 per week until further Order of the North Carolina Industrial Commission. Any accrued compensation shall be paid in a lump sum. *Page 11 
2. Defendant shall pay all medical expenses incurred or to be incurred as a result of Plaintiff's compensable occupational disease of right thumb carpometacarpal joint arthritis for so long as such evaluations, examinations, and treatments may reasonably be required to effect a cure, to give relief, and/or to lessen his period of disability, in accordance with the provisions of the North Carolina Workers' Compensation Act.
3. The prior Full Commission award of attorney fees shall remain in effect. Additionally, Plaintiff's counsel is hereby awarded attorney's fees associated with the current appeal to the Full Commission, pursuant to N.C. Gen. Stat. § 97-88. As such, Plaintiff's counsel shall submit to the Full Commission an Affidavit setting forth the time spent preparing for, attending, and arguing this appeal to the Full Commission within 30 days of the filing of this Opinion and Award. Upon review of this Affidavit, the Full Commission shall issue an Order awarding the specific amount of attorney's fees to which Plaintiff's counsel is entitled.
4. Plaintiff's request for attorney's fees under N.C. Gen. Stat. § 97-88.1 is denied.
5. Dr. William De Araujo shall remain Plaintiff's authorized treating physician.
6. Defendant shall pay the costs of these proceedings.
This the __ day of April 2011.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
S/___________________ DANNY LEE McDONALD *Page 12 
COMMISSIONER
 S/___________________ STACI T. MEYER COMMISSIONER *Page 1